UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

MAY 2 5 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-356-GWU

MURL W. JONES,                                                          PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB).  The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity?
        If yes, the claimant is not disabled.  If no, proceed to Step 2.
        See 20 CFR 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical
        or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
        claimant is not disabled.  See 20 CFR 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any
        impairment(s) significantly limiting the claimant's physical or
        mental ability to do basic work activities?  If yes, proceed to
        Step 4.  If no, the claimant is not disabled.  See 20 CFR
        404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

2

reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6ᵗʰ Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6ᵗʰ Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

Jones

symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's

allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be

4

Jones

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

6

Jones

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Ibid</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Murl W. Jones, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of adult onset diabetes, a history of left knee pain, a history of right leg numbness, an affective disorder, and anxiety. (Tr. 17). Nevertheless, the ALJ determined that the plaintiff would have no exertional limitations, and would have no less than a "limited but satisfactory" ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, function independently, maintain attention and concentration, handle detailed instructions, relate predictably in social situations, demonstrate reliability, and adapt to changes in the work setting. (Tr. 20). In response to a hypothetical question including these factors, a vocational expert (VE) testified that the plaintiff could perform his past relevant work as a parts clerk, and as a "parts counter." (Tr. 222-3).

7

The VE also identified other jobs that the individual could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 223).  In response to questioning from the plaintiff's representative, the VE stated that his answer would not change if the hypothetical individual had a "seriously limited but not precluded" ability to respond appropriately to supervision, co-workers, and work pressures in a work setting.  (Tr. 224).  The ALJ declined to allow the VE to answer other questions, including the vocational impact of a Global Assessment of Functioning (GAF) score of 50.  (Tr. 225-7).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

Mr. Jones alleged disability due to physical problems, including diabetes, poor circulation, and "fall[ing] down," as well as anxiety and memory loss.  (Tr. 67).  He presented very little medical evidence from treating sources, and no physician indicated that he had any specific functional restrictions.  (Tr. 133, 140-2).  A state agency reviewing physician who had access to all the physical examination and testing results concluded that his conditions did not produce any functional impairment, and were less than "severe."  (Tr. 158).  Since there is no evidence to the contrary, this portion of the ALJ's decision is supported by substantial evidence.

Regarding his medical impairments, Mr. Jones testified that he had been forced to stop working after a "nervous breakdown" because his job as a parts

counter clerk had become too stressful, and because he was unable to take time off
to dispose of his late grandmother's estate. (Tr. 208-10). He had been seen by the
Adanta mental health clinic for a brief period, but was unable to afford their services
or the medication they provided. (Tr. 212, 217). He described being depressed, and
not wanting to leave his house or be around people. (Tr. 217-18). He was forgetful,
could not concentrate, heard voices, and had considered suicide. (Tr. 218, 220-1).

The evidence concerning psychological impairments includes a third party
Activities of Daily Living report from the plaintiff's daughter stating that he stayed in
bed constantly, had crying spells, panic attacks, and mood swings, did not like
crowds, had no interests, had lost his friends, heard and saw things that were not
there, and was frequently grouchy. (Tr. 84-91).

James Leisenring, a licensed psychologist, examined Mr. Jones on November
26, 2002, and noted that, while he was pleasant and cooperative, he was also tense
and anxious. (Tr. 135). He was able to do some household chores, but had
experienced frequent crying spells, constant worry, and social withdrawal, problems
that were confirmed in person by his daughter. (Tr. 136-7). Mr. Leisenring ultimately
diagnosed a dysthymic disorder and an anxiety disorder, and assigned a GAF score
of 50. (Tr. 137-8). A GAF score in this range reflects "serious impairment in social,
occupational, or school functioning . . . e.g., "unable to keep a job." Diagnostic And
Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR),

9

p. 34. Mr. Leisenring commented that "due to marked depression with anxiety, [Mr. Jones] would be significantly compromised in reference to his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting." (Tr. 139).

A state agency psychologist who reviewed the record at this point stated that the plaintiff did not have a "severe" mental impairment, a conclusion clearly at odds with Mr. Leisenring's report. (Tr. 143). Another state agency psychologist reviewed the record on March 10, 2003, and wrote that Mr. Leisenring's opinion was "given great weight and adopted" and that the plaintiff's mental allegations were "credible." (Tr. 161). Inconsistently, the psychologist also concluded that Mr. Jones retained the ability to function adequately in a "non-public setting," and prepared a mental residual functional capacity assessment stating that the plaintiff would be no more than "moderately limited" in any area of functioning. (Tr. 159-60). Obviously, if the plaintiff's testimony was given credibility, his limitations were far more than moderate, and Mr. Leisenring's GAF score was in the "serious" range. Therefore, regardless of statements to the contrary, his opinion was not being "adopted" by the non-examining psychologist.

The plaintiff sought treatment at Adanta beginning in March, 2003, and was given an initial impression of a major depressive disorder without psychotic features, and a GAF of 55, reflecting "moderate difficulty in social, occupational, or school

10

Jones

functioning" per the DSM-IV-TR. (Tr. 185, 188). However, at a "Medical and Psychiatric Evaluation" on March 26, 2003, the staff psychiatrist, Dr. Alan Myers, noted the plaintiff's history of being treated by a psychiatrist as a child for mental and "some physical" abuse, and his history of anxiety and depression beginning in 2002. (Tr. 179). Mr. Jones reported that Zoloft from his primary care physician had helped somewhat. (Id.). He had a fair ability to relate, and was cooperative, but had a nervous and depressed mood and "downcast and anxious" affect. (Tr. 181). Dr. Myers diagnosed a moderate recurrent major depressive disorder and an anxiety disorder, and assigned a GAF of 50, the same as Mr. Leisenring's. (Tr. 182). He prescribed psychotherapy and the medication Lexapro. (Id.). On the plaintiff's one follow-up visit, the dosage of the medication was increased, and other medication was added to help with sleep. (Tr. 177). No new GAF was given. As previously mentioned, Mr. Jones stated that he was unable to afford to continue treatment.

The ALJ, while noting the GAF scores and their meaning, as well as Mr. Leisenring's belief that Mr. Jones would be "significantly compromised in reference to his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting," eventually found that Mr. Jones had "some limitations based on his diagnosed mental impairments" but that they would not significantly limit him in work-related activities. (Tr. 19-20). The primary reason given was that "the claimant has not demonstrated inappropriate behavior and interaction with examiners or

11

treatment providers." (Tr. 19). The ALJ also cited the state agency reviewers and the lack of corroboration of his symptoms. (Tr. 19-20).

While the opinion of a non-examining source may be accepted over that of an examiner, the non-examining source must have had access to the entire record and clearly explained the reasons for the difference in opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). In the present case, the state agency reviewers did not have access to the records from the treating source, Dr. Myers, and they did not explain how they reached their conclusions that the plaintiff would be much less limited than indicated by Mr. Leisenring, both in the body of his report, and in terms of the GAF score. The second reviewer also indicated that the plaintiff's complaints were credible, which, if true, would manifestly preclude any employment. See Social Security Ruling 85-15, p. 4. Therefore, the opinions of the state agency sources did not provide substantial evidence to support the ALJ's conclusion.

The ALJ's refusal to give any significant weight to the GAF scores found by Mr. Leisenring and by Dr. Myers, and his refusal to allow the VE to be examined on this point, is also error. The GAF scores represent functional restrictions. In particular, an indication of functional restrictions from a treating source, even of brief duration, is entitled to great weight, and cannot simply be disregarded because of the ALJ's lay opinion. Moreover, while the VE might not be a psychologist, he can certainly give his opinion, if any, as to the vocational impact of a "serious impairment

12

Jones

in social, occupational, or school functioning . . . e.g., unable to keep a job," which was what the plaintiff's representative was attempting to ascertain. (Tr. 225-6).

Finally, the ALJ's failure to consider third party evidence from the plaintiff's daughter, given both to the state agency and in person to Mr. Leisenring, is questionable in view of his determination that Mr. Jones' alleged limitations were based on his unsupported word and not entirely credible. Failure to consider the record as a whole undermines the Commissioner's conclusions, and lay testimony joined with medical evidence may establish disability. See, e.g., Hurst v. Secretary of Health and Human Services, 753 F.2d 517, 519 (6th Cir. 1980) (citations omitted).

The decision will be remanded for further consideration in accordance with this opinion.

This the _____25_____ day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE

13